appearing on behalf of appellant Nathan Williams. The other name in this caption is United States of America. And my esteemed colleague who represents the United States of America tells that to the jury. And the reason why, partly, is because it carries weight. We all know that the representative of the government has a lot, carries with that a lot of prestige and a premature validity when they're talking to a jury. And that is probably legitimately so. He is there as a representative of the United States of America and all the power that that entity has. What comes along with that responsibility, though, what comes along with that, with all of that, is this idea that what the government says during closing arguments is going to be subject to close scrutiny, because their words do carry so much force, do have so much persuasive value with the jury. And when the government gets up there as a representative of the government and tells the jury that this police officer came up here and he got on the stand and he told the truth, that that is considered improper. That's considered overpersuasive. It's telling the jury that, look, I'm here as a representative of the government. I know about this case. And I'm telling you that this police officer told you the truth when he got up there. And that's directly what we have in this case. Let me ask you this. First, the defense counsel said that the police officer lied. I wouldn't contest that. I would contest that characterization. He didn't say he lied? She. She said that there are inconsistencies in the facts that were developed at trial, and that if you look at those inconsistencies, you will find the seed of reasonable doubt. And she's very, and you'll see the examples there in the government's answering brief at page 22. And 23, the government lists examples of the defense counsel's arguments. And she says things such as, example, you need to listen to the officer's testimony, not just one officer, but all three officers, and ask yourself, does their testimony match? Because if it doesn't, you might have reasonable doubt. Classic role of defense counsel. Look at the facts that were produced at trial, compare the testimony of different witnesses, and tell the jury, look, the testimony doesn't match. That's a problem. She's not directly saying this man's a liar. She's saying that he may have been mistaken. He may have conflagrated his testimony. He may have seen something he didn't believe he could have seen. And the linchpin of this case is Officer Russell. Officer Russell is the government's entire case. He's the only person who saw our client with a gun. And if you believe Officer Russell, you have to convict Mr. Williams, plain and simple. When she just didn't say, there seemed to be some inconsistencies, she said, that's garbage and that's not truthful. Not truthful is not saying it's a lie? Well, she's saying that the testimony regarding the distance, how far away Mr. Williams was from the officer, that he was mistaken or he wasn't totally truthful about how close the firearm in that dark Vegas motel room was. All of a sudden you see a gun on the ground. Oh, it must have been a gun. That's garbage and that's not truthful. Maybe she didn't say he lied, but she said he didn't tell the truth. She is casting doubt on the veracity of all his assertions. All right, we're getting close now. Yes. I'm not saying that the characterization that she was saying that Officer Russell was a lying scumbag is not accurate. She didn't say scumbag. She did not say scumbag. But, you know, okay, the point is, well, what do defense count? We do those things. And the question is, well, Mr. Carr, why are you holding us to a different standard? I'm holding us to a different standard because that's what the law says that we do, because when I get up there as a trial counsel, I don't represent the United States of America. All right. I was just getting to my question. My preliminary statement was she said the officer had been untruthful. Now we can get back to the rest of the question after several minutes. So she said the officer was untruthful. Now, what can the U.S. attorney then say in response? Can he defend the truthfulness of the officer? He can. He has to do it legitimately. And the way he does it is the same way that defense counsel did it, which is, say, jury, you look at the facts. There are facts that support his assertion here, and those facts are A, B, and C, which you're not allowed to do is go to this level above the trial-level testimony and make a personal assertion of credibility. And that's exactly what we have here. Instead of connecting testimony, you know, connecting the testimony and making a path, a bread trail, if you will, for the jury to follow, the prosecutor is going above that and saying, I, you know, he doesn't have to say I am a representative of the government. I mean, that's implicit. He's saying this officer got on the stand and he told the truth. And he does this with a rhetorical flourish, saying, well, he must have lied to me and everybody else. You know, he's a liar. He lied to everybody. There's a problem with that. But the most important thing, the most important thing he said was he lied to everybody, the judge, the jurors, but he lied to all these people. And he lied to me. And I'm prosecuting this case. That was the most important thing. Exactly. And that's implying that he has extra record knowledge the jury doesn't have that supports his characterization of veracity. That's one problem. That's one instance of vouching that occurred in this case. There's other layers of misconduct. The most important one, in my opinion, is the flaunting of the motion in limine. The district court judge fashioned this careful ruling and said you can only talk about this alleged robbery for the limited purpose of explaining why the cop chased after Mr. Williams. And you, defense counsel, because I'm going to limit it to that, the government to that, you are not allowed to bring up all this testimony that establishes or tends to establish that this robbery never even occurred, that this sit-up. You're switching from the vouching argument now, right? Excuse me? You're switching from the vouching. Yes, I am. You're through with the vouching. I'm through with the vouching. I'm into the flaunting of the motion in limine, and that is very important, because what the prosecutor told the jury was that this evidence that a robbery occurred was uncontradicted. When he knows, and we all know, that there was a plethora of evidence tending to contradict that a robbery occurred, defense counsel couldn't bring that in because of the district court's motion in limine ruling. And the prosecutor took advantage of that by telling the jury this evidence of a robbery is uncontradicted, knowing full well that there's a lot of evidence out there the Court kept out saying that it is very contradicted. And that's just like Cruz-Garcia. If you look at the footnote 5 of that Cruz-Garcia recent opinion from this Court, the facts of those match up, and this Court has issued some very strong language about the propriety of that as well as should. To sit there and tell a jury to loft that unwarranted innuendo into the jury box has been condemned by courts for quite a long period of time. And it's not fair to argue that to the jury, which ties into our sentencing issue, which is they – the proof that this supposed robbery occurred is we confess that it certainly doesn't meet a preponderance of the evidence standard. We have this guy tell a cop, oh, this guy robbed me. But this individual lies about every single identifying factor about himself. He lies about his identity, his date of birth, his social security number, everything he told the cop was a lie. The only thing the government says wasn't a lie was his accusation that Williams robbed me. But we were never able to find this individual. This individual never testified because he's a liar. We don't know who he is. And if you look at the Supreme Court case J.L., which is about reasonable suspicion, the Supreme Court holds there that an anonymous tip isn't enough for a reasonable suspicion finding because there's no way to verify who this person is. We can't tell if he's a liar, if he has an axe to grind against this person, if he's making false accusations because he has an axe to grind. We cannot investigate any of this in this case because we don't know who this person is. And it's very important because we're talking about a four-level swing. And I'm not in the one point I'd like to make is that the government is saying, well, this is a clearly erroneous standard of review on the sentencing issue because the Court found that a robbery occurred. But what I'm arguing is that the quantum of evidence that the Court looked at is insufficient as a matter of law, indeed as a matter of constitutional law, to support the sentencing enhancement. I'm saying that this hearsay statement alone is not enough as a matter of law, so it's erroneous standard doesn't apply. It's an issue of constitutional import. It's a de nobis standard of review. I only have a minute of time. I'd like to reserve that for rebuttal, if I may. Thank you, counsel. Good morning. May it please the Court. I'm Darren LaHood with the United States Attorney's Office in Las Vegas. In response to the defendant's argument here today, Your Honor, in closing argument, there were specific allegations made against Officer Russell. He went through a blistering cross-examination, as rightly he should, by the defendant. But the statements that were made in closing argument by the defendant that specifically stated that, talked about this officer planting a weapon on this particular individual, I don't think you impugn someone's credibility more than talking about planting evidence on an individual. Well, I didn't say planting evidence. Your Honor, the comment that was made was, you know, I don't know if this officer planted a weapon. I'm not going to say that. By not saying it, you're saying it. I don't know how clear that can be, Your Honor. Talking about planting a weapon in closing argument on the officer whose one person that's credibility is central to this case, that statement right there impugns that officer's credibility more than anything else, beyond what you stated earlier. Talking about his testimony. His testimony is garbage. His testimony isn't truthful. Talking about what he saw. He didn't see what happened here. He didn't see it. What he says doesn't make sense. Talking about Officer Russell. These are five or six or seven different things that are said about his testimony in this trial. What he said didn't happen. His testimony doesn't make sense. This officer was less than candid with you as members of the jury. Okay. Let's assume that they – that's where I started my question, was that the defense counsel made it clear to the jury that they thought the officer's story was all false and made up and it was a lie. What is legitimate for the U.S. attorney to do in closing argument and rebuttal to that? Is it all right, then, to say government witnesses always tell the truth because otherwise they face consequences? Of course. That statement you just made crosses the line, Your Honor. I mean, there's a point you can go up to. By saying all governor witnesses that testify in this trial, this officer and two other officers and all our other witnesses tell the truth. Are you taking the position that if defense counsel is obnoxious, the governor can be that way, too? Well, Your Honor, I don't believe it rose to the level of obnoxious here, but this went to the central issue, which was credibility. You can lower yourself to defense counsel? Is that the position of the U.S. attorney? Well, Your Honor, I'm responding adequately when an officer's credibility is put in question here, which is directly in this case. Can you tell the jury that he's telling the truth because if he didn't, he'd lose his job? How do you know that? Well, I think I have to respond, Your Honor. I'm sure they're unionized. You know, the union's going to step in and protect the owners. Well, Your Honor, when a jury trial In a jury trial when an officer's credibility is placed at stake, there has to be some type of response there. Well, that's the question. What type is proper and what type is improper? Of course there has to be a response. And I think in this case, talking to the juries and telling him that this individual has a lot to lose by coming in here and not telling the truth. And I think that's proper argument in response to what is alleged here. And when we have one officer who made this arrest here and that is the one solely responsible for observing this defendant possess this weapon, it's his word versus what the defendant and what the defense attorney says. That credibility and that question is central. So when you say, cop is a liar, he's not telling you the truth, he planted evidence, there is a line that the government. I mean, there's some things obviously you couldn't say to them. You must believe all cops. Cops never lie. That would be wrong, right? That would be wrong. You're correct, Your Honor. So there is what we're trying to find out here is what is legitimate to say in defending a police officer against the charge that he's lying. And I believe the argument that was made by the government by myself at this point, Your Honor, was appropriate. It did not cross that line. Talking about this officer, him telling the truth to the members of the jury, to the judge, to myself, I think is appropriate here. Essentially, by saying this officer lied by everything he said in this trial, I'm simply writing the scale here, responding directly, saying, well, I guess he lied to me, he lied to everyone else, he's lying to you here today. An officer isn't going to risk that type of punishment, for lack of a better word, in what could happen to him by coming in there and lying. And so writing the scale, as I talk about in my brief, and responding directly to these allegations was appropriate here, Your Honor. But can you say to the jury, I can tell you he told the truth? I didn't say, Your Honor, what I said was he must have lied to me, he must have lied to everybody else. But, again, the response that I had was in direct result of what was said, saying, I don't know how much more you can say about an officer than he planted evidence on this defendant. That is extremely damaging to my one officer who my credibility relies on, and we have that responsibility to prove this case. Kennedy. You can handle that very, very easily, sensibly. Where is the evidence? Members of the jury, they did. Don't fall for that kind of thing. But to get up and portray this officer losing his job, losing his pension, his wife and his kids are going to be destitute, that's beyond the pale, isn't it? Well, and that last comment you made, I didn't say that, Your Honor. Almost. He's going to lose his job, he's going to lose his pension, risk losing his livelihood. I didn't say his family would be destitute, Your Honor. I did make those other comments specifically to that. But it was in a reaction to exactly what was put in place in this officer's credibility. Well, we understand the reaction, but the question is, is the reaction lawful? And I think if you look at other cases in this area, Your Honor, that I cite in my brief, I think it was appropriate in this case. I do, Your Honor. I want to move to the other point that Mr. Carr talked about in taking advantage of this. The other part of this is, the first part is the question of whether it's okay to say, you know, this officer doesn't lie. You could say this about any officer. Officers don't lie because they would risk losing their jobs, their pensions, and all of that, so you should always believe police officers. The second thing is whether the U.S. attorney can say, he told the truth in this case. He came in here, he told you the truth. He came in here and told you the truth about what happened. That's an assertion on your part that the witness was truthful. Now, you know, these rules are not entirely clear and not entirely logical, but there is a rule that says you can't vouch for the witness. And the question is, is that vouching for him? When you tell the jury, he came in here and what he did was tell you the truth. Are you telling the jury that that's your view of what the officer did? Your Honor, I'm telling the members of the jury what happened in that trial, in that particular case. You're saying to them, I'm telling you he told the truth. I'm telling you what she said in her closing argument is not accurate. That is not accurate. What she said about him planning evidence, about him not being truthful, by what he said all being garbage, that's not truthful. That's not what happened here. And that was the appropriate response in this particular case, Your Honor. Your Honor, moving to the second point that was mentioned about the government somehow taking advantage of the motion in Limney, if you look through this entire record, there's not one instance where the government prosecutor in this case ever mentioned any of the details of this robbery, got into exactly what happened with this robbery, or mentioned anything to do with that. And if you look at what the judge, when the issue came up about how the officer responded in this case, I followed the rules which were to say this officer stated that a man approached him and frantically yelled, that person over there robbed me. I never went outside of those lines anywhere in this record. And that's clear. In addition, Judge Hunt went the extra effort, and when I even brought this up, admonished the members of the jury in the record and told them, he's not on trial for this. You don't listen to this. You don't take anything into account about anything to do with this robbery. That's what I abided by, within those parameters. And those parameters were abided by throughout the trial. And there's not one instance when I went outside of those bonds and talked about any of the details, the cell phone being found, the $50 being found, or anything, the victim being brought to the scene later. That was never mentioned anywhere in this record. And so I would state to this Court that the government prosecutor in their argument never went outside of the motion in Limney. We did abide by what the judge did in this particular case. And the last point that defense counsel made regarding the four-point enhancement, I believe the judge made the right decision here. If you look at the particular facts here, I believe the government would be on shaky ground, Your Honors, if only thing we had was this victim said, I was robbed by that man, and that was it. But we have this corroborated by the fact that he says, I was robbed of $50 and a cell phone. Beyond that, the victim was brought back to the scene. There's $50 and a cell phone found. There was more than $50. Well, I dispute that, Your Honor. There's no evidence of that anywhere that there was more than $50. The defense counsel made that at sentencing. There was no evidence of anything, any reports, nothing. That wasn't backed up by one ounce of truth or one ounce of evidence, Your Honor. Was there any attempt to ascertain who owned the cell phone? There wasn't on behalf of police, Your Honor. But, you know, that wasn't the only thing that corroborated. But there was a cell phone and the $50. But beyond that, Your Honor. Well, we don't know that there was only $50. We know there was at least $50, right? We know that there was two $20 bills and two $5 bills that were taken off that defendant. Whether there was any more money than that, she raised that at the sentencing, but that was never corroborated. I said we don't know either way. All we know is that he had with him at least $50. At least $50 and a cell phone. Okay. Go ahead. Can I ask you about one other comment, just out of curiosity, what this meant? When you have any argument over reasonable doubt and you're told the jury they convict people just like him every day using the reasonable doubt standard, what are people just like him? Well, Your Honor, first of all, there was no objection to that statement in the closing argument. I said this was out of curiosity. In addition, Your Honor, the defense went through a whole litany of reasonable doubt arguments that went after the reasonable doubt standard. Your Honor, simply stating that this reasonable doubt standard is the same standard used by juries all across the country in courtrooms just like this. No, not in courtrooms just like this. To convict people just like him. What are people just like him? Meaning that defendants across the country that are found guilty in jury trials, that same standard is used, Your Honor. It's not a different standard than is used in other places. This is the same consistent standard that's used in jury trials all across the country. Okay. All right. Thank you. Thank you. I got one question to ask you. Yes, sir. Your statement, by the way, was there any evidence why this defendant didn't stop there? Now, doesn't that imply a failure of the defendant to testify? Aren't you commenting upon that statement and implication that the defendant should have testified and he didn't? Well, Your Honor, when a person Where else, where else, where else would anybody know why he didn't stop running except the defendant himself? And then when you comment that he didn't testify as to why he wasn't, why he didn't stop running. The point of that statement, Your Honor, is when somebody, an officer is 50 feet away from you on a deserted street at 3 in the morning and somebody on the other side frantically yells, that person robbed me right there, the defendant's a five-time convicted felon. He's familiar with the criminal justice system. You would think he would want to walk over and explain to the officer at that time, this is why or this isn't true, what he's saying. This didn't happen. I didn't do this or I didn't do that. Instead, as the officer testified, he sprints, a full sprint away from the officer, runs through there with a loaded gun. Well, that's your argument. So that's what you say. That's the question. But then you go on to what Judge Ferguson talked about. You make that whole argument. You convince the jury. Why else would somebody run? What the question is, is there a justification for saying, he didn't get up here and tell you why he ran, you didn't say it directly. The question is, but nobody came and told you why he didn't run. There's no evidence as to why, I mean, as to why he ran. There's no evidence as to that. You could have said all the things you just said. You made a nice jury argument. Why does somebody run at 3 in the morning, a five-time convicted felon? Why would he run? Is there any other explanation? That's all fine. But then you say, and nobody told us why he didn't run. Well, who's going to tell you? He would have to tell you why he ran. Was there any evidence why this defendant didn't stop? Well, you know. Why? Why? Why? I mean, he didn't stop, and that's all you have to have. But why? Why did you happen to insinuate, more than insinuate, that the question can be answered because the defendant didn't testify? Well, Your Honor, my overall argument is the blistering cross-examination that our one witness went through and the closing argument when they allege what officer said isn't telling the truth and that somehow what this officer observed in him running or not running, you know, that's a credibility of the officer. So, you know, the officer said that he ran and he was cross-examined on that. Maybe it happened. Maybe it didn't happen. But his credibility is put in question. Did the officer see him run or maybe he didn't run? I think that needs to be addressed and put forth to the jury, Your Honor. And as I make at the end of my argument, the evidence we believe was clear in this case, and whatever points that you're making I believe are harmless in the way that I summarized my argument, Your Honor. With that, thank you. Thank you very much, counsel. I have to object to a couple points of fact from the government. Defense counsel many times during the motion limiting argument at sentencing said my client had more than $50 on him. Not once did the government ever object to that characterization. Or we could have proved it then if they were saying that that wasn't true. It isn't. She said it at least four times in this record, that Mr. Williams had much more than $50 on him, had more than $50 on him, and they found him. And what else she said was this lying person whose identity we were never able to find told the cop that he stole two 20s and a 10. The police gave the guy back two 20s and two 5s. So the denominations didn't even match up. In addition, you know, there's a whole issue about the cell phone. If the cops had just verified that the cell phone belonged to this anonymous liar person, we'd have a much different case. But we never they never did that. They just handed it over and that was the end of it. And we were never able to find this guy, ever, which ties into another point here akin to what the Court was concerned about. The government, during closing arguments, says three times in one page that evidence of this robbery was uncontradicted. Who would be able to contradict that besides the defendant? Because we certainly can't find the person, this anonymous person who was allegedly robbed. So once again, the implicit comment on the defendant's failure to testify. And in addition, and the sensing issue is very important here. Not if you get the conviction. Well, that's true. But the reasonable doubt thing is very important. And I would ask the Court, well, how do we parse out defense counsel objected many times here in closing, didn't object to every specific instance, which is an issue onto itself, which I agree. But the reasonable doubt thing, if you truncate, if you diminish the importance of the reasonable doubt instruction, there's case law that says that's structural error, there's no harmless error analysis of that. We need to minimize that. Thank you. The case just argued will be submitted. The next case on the calendar is United States v. Ali Abdullatif Karouni. I don't think I did too well on that one. Karouni.
judges: Ferguson, Reinhardt, Paez